UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUGUSTINE ARAGON,<br><br>                         Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                         Respondent. | Case No.:  3:19-cv-00438-BEN<br>                        3:17-cr-01068-BEN-1<br><br>**ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE BUT STRIKING CONDITIONS OF SUPERVISED RELEASE 4, 5, AND 13**<br><br>**[ECF Nos. 89, 92, 95]** |

Petitioner Augustine Aragon moves under 28 U.S.C. § 2255 ("Section 2255") to Vacate, Set Aside, or Correct his Sentence.  ECF No. 89.[1]  For the reasons discussed below, the motion is **DENIED**.[2]

---

[1]      In reviewing Petitioner's motion, the Court is mindful that "[a] document filed *pro se* is to be liberally construed . . . and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).  All ECF. No. references are to the criminal case, 3:17-cr-1068-BEN-1.

[2] Petitioner's Motion to Compel Discovery, ECF No. 92, is **DENIED**.  The Government's Motion for Extension of Time to File Response, ECF No. 95, is **DENIED** as moot.

1

# I.   BACKGROUND

On April 28, 2017, federal agents, operating on an indictment and arrest warrant, arrested Petitioner for participation in a conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1).  Arrest Warrant, ECF No. 3.

The Government began investigating Petitioner and two co-conspirators in 2016. Pre-Sentence Report ("PSR"), ECF No. 51, 4.  Petitioner had close ties to Los Diablos, a street gang in Escondido, California, that transported and distributed narcotics and weapons within California, Washington, and Georgia.  *Id*.

On October 6, 2016, Petitioner sold four grams of methamphetamine to an undercover officer of the San Diego County Sheriff's Office.  PSR, ECF No. 51, 5.  On November 9 and 16, 2016, Petitioner distributed 55 and 27 grams, respectively, of methamphetamine (actual) to an undercover law enforcement officer.  *Id*.  After these sales, law enforcement agents intercepted text messages and phone calls between Petitioner and a larger drug dealer.  *Id*.  These calls and texts indicated Petitioner was trying to acquire significantly larger quantities of methamphetamine.  *Id*.  At the same time, Petitioner's girlfriend, Marcia Cervantes, who was living with Petitioner, distributed 29.9 grams of methamphetamine (actual) to an undercover agent.  *Id*.

On December 11, 2016, Petitioner purchased approximately two pounds of methamphetamine from co-conspirators.  PSR, ECF No. 51, 5.  Ten days later, Petitioner attempted to purchase a further 654 grams of methamphetamine (actual) from co-conspirators, but the drugs were seized before they were delivered to Petitioner.  *Id*.  The investigation into Petitioner continued for three more months.  *Id*.  During that time, Petitioner possessed and sold firearms in connection with his conspiracy to distribute methamphetamine, including semi-automatic AR-15 style weapons without serial numbers.  Plea Agreement, ECF No. 25, 5.

On April 26, 2017, Petitioner was indicted in the Southern District of California and charged with participating in a conspiracy to distribute 50 grams or more of methamphetamine (actual), in violation of 21 U.S.C. § 846 and 841(a)(1).  Indictment,

2

ECF No. 1.  He was arrested two days later.  *See* Arrest Notice, ECF No. 3.

On September 19, 2017, Petitioner consented to entering a Rule 11 plea, and a change of plea hearing was held before Magistrate Judge Ruben Brooks.  ECF. No. 24. After Petitioner was placed under oath, the Court found, *inter alia*, Petitioner knowingly and voluntarily entered into a plea agreement, Petitioner was not subject to any threats or coercion, the promises made in exchange for his plea were limited only to those contained in his plea agreement, and that there was a factual and legal basis for the plea. ECF. No. 26 at 3-5.  Accordingly, Magistrate Judge Brooks issued Findings and Recommendations advising that the Court accept Petitioner's guilty plea to Count 1 of the indictment.  *Id.* at 4.  That same day, Petitioner signed a written plea agreement (the "Plea Agreement"), pursuant to which he agreed to plead guilty to conspiracy to distribute over 50 grams of methamphetamine as defined by 21 U.S.C. §§ 846 and 841(a)(1) (the "Plea Agreement").  *See* ECF No. 25.

In the Plea Agreement, Petitioner initialed pages indicating he understood, among other things, that: (1) he entered into the Plea Agreement freely and voluntarily; (2) he "had a full opportunity to discuss all the facts and circumstances of the case with defense counsel and has a clear understanding of the charges and the consequences of this plea"; (3) the facts in the "factual basis" portion of the Plea Agreement are true; (4) no one threatened Petitioner or his family to induce his guilty plea; and (5) he waived, "to the full extent of the law, any right to appeal or to collaterally attack the conviction and any lawful restitution order, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel."  *See* ECF No. 25, 7, 11-12.

On October 19, 2017, after no objections were received, the Court adopted Magistrate Judge Brooks' Findings and Recommendations and accepted Petitioner's guilty plea.  ECF. No. 33.

The Parties submitted identical sentencing summary chart calculations.  *See* ECF Nos. 52 and 55.  The Parties' Sentencing Guideline Calculations were as follows:

**Base Offense Level** [U.S.S.G. § 2D1.1(c)(3)]: 34

3

**Possession of a Firearm** [U.S.S.G. § 2D1.1(b)(1)]: +2

Accordingly, the Adjusted Offense Level was 36.[3]  *See* ECF Nos. 52, 55.  Both the Government and Petitioner's counsel, David Baker, argued for a three-level reduction for acceptance of responsibility.  *See* ECF Nos. 52, 55.  The PSR contained the same recommendations listed above but also recommended a two-level increase for Petitioner's supervisory role in the offense.  PSR, ECF No. 51, 21.  The PSR's recommendation came from language in the Plea Agreement stating "[o]n October 13, 2016, defendant Augustine Aragon had his girlfriend, Maria Cervantes, distribute 29.9 grams of pure methamphetamine to an undercover law enforcement officer."  ECF No. 25, 4.  As discussed in the Analysis section below, the Court addressed this discrepancy during the sentencing hearing.

At sentencing, the Court inquired about the mandatory minimum in this case, but the Government informed the Court that it "was aware of [Petitioner's] efforts to, toward the end of the investigation . . . try and change his conduct to a certain extent, so we took that into consideration in determining whether or not to file notice of the prior conviction under 851."  Tr., ECF No. 96, 17 (citing 21 U.S.C. § 851(a) (prohibiting defendants from being subjected to increased punishment by reason of previous convictions "unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the Court")).

While the Court considered the Government's argument favoring a sentence at the

---

[3]    Although Petitioner argues that he was unable to present evidence of his cooperation with the Government at sentencing, the Court considered the record in this case at the time of sentencing, which included the PSR.  The PSR stated that "[t]he defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty."  ECF No. 51, 8.  On that basis, the PSR recommended a further reduction by one level. *Id.*  As such, separate and aside from whether any parties presented evidence on this issue at sentencing, the Court had been made aware of Petitioner's cooperation with the Government in investigating his own crimes.  *See id.*

lower end of the guideline range and was aware of its authority to depart from the guidelines, it chose to award a sentence at the high end of the guideline range because of Petitioner's extensive criminal history. Tr., ECF No. 96, 22. The Court specifically noted its concern Petitioner was dealing in both drugs and firearms, and thus found a significant period of incarceration was warranted. *Id*. As such, the Court sentenced Petitioner to 210 months in custody and a term of three years supervised released. Judgment, ECF No. 61.

During the sentencing hearing, the Court directly asked, "Mr. Aragon, do you acknowledge that you waived your right to appeal and collateral attack?" to which Petitioner responded, "Yes, Your Honor." ECF No. 96 at 25:15-20. Petitioner did not appeal his sentence. On March 5, 2019, Petitioner filed this motion less than one year after judgment in his case became final, alleging Petitioner's counsel, David Baker, provided ineffective assistance of counsel in five ways. Mot., ECF No. 89. Petitioner also alleges (1) three of his conditions of supervised release are unconstitutionally vague, (2) he was under duress at the time of sentencing, and (3) his sentence was based on inaccurate information. *Id*.

## II.    LEGAL STANDARD

Under Section 2255, a petitioner is entitled to relief if the sentence (1) was imposed in violation of the Constitution or the laws of the United States, (2) was given by a court without jurisdiction to do so, (3) was in excess of the maximum sentence authorized by law, or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Speelman*, 431 F.3d 1226, 1230 n.2 (9th Cir. 2005). Here, Petitioner alleges his sentence was imposed in violation of his Sixth Amendment right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *United States v. Alferahin*, 433 F.3d 1148, 1160-61 (9th Cir. 2006). He also claims certain portions of his sentence violate the Constitution. *See United States v. Evans*, 883 F.3d 1154, 1162-1164 (9th Cir. 2018).

## III.   ANALYSIS

Petitioner moves to vacate or correct his sentence on eight different grounds.  Mot. at 4-14.[4]  The first five grounds Petitioner allege his counsel's representation was ineffective because his attorney (1) coerced Petitioner into signing the Plea Agreement, (2) failed to present mitigating evidence at the sentencing hearing of (a) family support letters or (b) post-arrest rehabilitative efforts, (3) failed to inform Petitioner he had the right to correct inaccurate information in the PSR, and (4) failed to inform the Court of Petitioner's desire to cooperate with the Government.  *Id.*  Petitioner further argues that his sentence should also be corrected or vacated because (6) certain conditions of his supervised release are unconstitutionally vague, (7) he suffered from duress and fear during his sentencing hearing, and (8) his sentence was based on inaccurate information contained in the PSR.  *Id.* at 7-10.  As addressed at the end, the Court agrees that Ground Six merits relief.  However, Petitioner's remaining grounds for relief are denied for two reasons:  First, Grounds Seven and Eight are barred due to procedural default, both due to Petitioner's waiver of his right to collaterally attack his sentence as well as due to his failure to show actual prejudice.  Second, Grounds One through Five fail to show objectively unreasonable representation or actual prejudice sufficient to support his claims of ineffective assistance of counsel.

### A.   Grounds Seven and Eight: Barred Collateral Attack Claims

Apart from Petitioner's ineffective assistance of counsel grounds for vacating or correcting his sentence, Petitioner argues that (1) he suffered from duress and fear at the time of his sentencing that prevented him from presenting all relevant mitigating evidence to the Court, and (2) his sentence was based on inaccurate information

---

[4]     All references to page numbers in Petitioner's Motion are to the page number shown in the ECF No. generated header at the top of each page rather than any page number shown on the document due to the Motion containing two separate documents, which have repetitive page numbers.

6

contained in the PSR.  Mot., ECF No. 89, 10-14.  Neither ground alleges these issues were due to ineffective assistance of counsel.

In exchange for certain concessions from the Government including dismissal of two other cases pending against him, Petitioner agreed to forgo a trial and instead plead guilty as evidenced by his signed plea agreement with initialed pages making clear that he understood that he was waiving "to the full extent of the law, any right to appeal or to collaterally attack the conviction and any lawful restitution order, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel."  *See* Findings and Recommendations, ECF No. 26, 7, 11-12.  During his Change of Plea Hearing, Magistrate Judge Brooks also expressly found that Petitioner understood he was waiving his right to appeal or collaterally attack his conviction and sentence.  *Id*. at 3.  Again, after sentence was imposed, this Court asked Petitioner directly whether he had waived his right to collateral attack.  Petitioner did not object or ask for an explanation of his sentence.  He agreed that he waived his right.  As a result, Petitioner's waiver of his right to collaterally attack his sentence, as he is now doing, raises two issues: (1) waiver and (2) procedural default.

## 1.   *Waiver*

"A defendant's waiver of his rights to appeal and to bring a collateral attack is generally enforced if '(1) the language of the waiver encompasses his right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made.'"  *Davies v. Benov*, 856 F.3d 1243, 1246-47 (9th Cir. 2017).  The right to collaterally attack a sentence is a statutory right that may be waived.  *United States v. Abraca*, 985 F.2d 1012, 1014 (9th Cir. 1993).  "A knowing and voluntary waiver of a statutory right is enforceable."  *Id*.

The Plea Agreement provides that Petitioner "waives, to the full extent of the law, any right to appeal or to collaterally attack the conviction and any lawful restitution order, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel."  ECF No. 25, 12.  Thus, to the extent Petitioner attempts to collaterally

attack his conviction or sentence, he waived his right to do so under the Plea Agreement. *See United States v. Navarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990). Further, to the extent Petitioner may try to argue such a waiver was not voluntary, the Court finds such arguments unpersuasive. During the sentencing hearing, the Court directly asked Petitioner, "Mr. Aragon, do you acknowledge that you waived your right to appeal and collateral attack?" Tr., ECF No. 96, 27. Petitioner responded, "Yes, Your Honor." *Id.* This statement confirmed both Petitioner's attestation on the Plea Agreement and Magistrate Judge Brooks' findings at the change of plea hearing. *See* ECF Nos. 24 and 25. Thus, Petitioner validly waived his right to collaterally attack his sentence, and the record discloses no issues as to the voluntariness of Petitioner's waiver. Therefore, the Court enforces the collateral attack waiver with respect to Grounds Seven and Eight.

## 2.  *Procedural Default*

Grounds Seven and Eight are also barred by procedural default. "The general rule in federal habeas cases is that a defendant who fails to raise a claim on direct appeal is barred from raising the claim on collateral review." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350–51 (2006). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either [1] 'cause' and actual 'prejudice,' or that [2] he is 'actually innocent.'" *Bousley v. United States,* 523 U.S. 614, 622 (1998) (internal citations omitted); *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003) (holding that "[a] Section 2255 movant procedurally defaults his claims by not raising them on direct appeal and not showing cause and prejudice or actual innocence in response to the default"). Here, Petitioner's Motion makes no claims of actual innocence, which would contradict the record in this case, including his guilty plea. *See* ECF No. 89. As such, Petitioner must make a showing of cause and actual prejudice to overcome his procedural default.

For the reasons outlined below, the Court finds that Petitioner has made no such showing for Grounds Seven and Eight.

8

a.   *Petitioner has not shown duress*

Petitioner argues he was denied due process of law because he was prevented from "presenting virtually any mitigation information at all to the Court at sentencing due to duress and fear of imminent bodily harm and fear of reprisal."  Mot., ECF No. 89, 30. The Government responds that it rejected Petitioner's offer to cooperate, and therefore any mitigating evidence Petitioner could have offered during sentencing but did not because of his safety concerns did not prejudice his sentence.  Opp'n, ECF No. 8. Moreover, Petitioner gave a long and detailed description of his previous criminal activity and the events leading up to his arrest during the sentencing hearing.  *See* Tr., ECF No. 96, 5-15.

It is a bedrock principle of this country that criminal proceedings are held open to the public both to encourage witnesses to come forward, discourage perjury, and allow the public to see a defendant is dealt with fairly.  *See, e.g.*, *In re Oliver*, 333 U.S. 257, 278 (1948) ("It is 'the law of the land' that no man's life, liberty or property be forfeited as a punishment until there has been a charge fairly made and fairly tried in a public tribunal."); *see also* U.S. CONST. AMEND. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."); *Presley v. Georgia*, 558 U.S. 209, 215 (2010) (extending the right to public observance at criminal proceedings to *voir dire*, noting that "[t]rial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials").

Reviewing the record, the Court finds no indication that the Government was interested in entering into a cooperation agreement or proffer session with Petitioner. Further, Petitioner's extensive statement during the sentencing hearing belies his allegation that he was not free to present mitigating evidence.  Finally, the record indicates that even if Petitioner did not present information on his "cooperation efforts," his sentence was still reduced by two offense levels by the Court in recognition of the fact that he accepted responsibility.  *See* Tr., ECF No. 96, 19.  Because Petitioner makes no showing that the Government was interested in cooperating with him, he does not

9

demonstrate any prejudice that would excuse his failure to raise this claim on direct appeal.  Accordingly, Ground Seven of Petitioner's claim is denied as procedurally defaulted.

### b. *The information in the PSR was not prejudicial*

In Ground Eight of his Motion, Petitioner argues his sentence resulted in a denial of due process because the PSR contained untrue information where it stated he directed his girlfriend to distribute methamphetamine, which Petitioner denies.  Mot., ECF No. 89, 32.

A sentence that rests on "improper or inaccurate information" violates due process. *See Dorszynski v. United States*, 418 U.S. 424, 431 n. 7 (1974).  However, the Court's sentence did not do so here.  During the sentencing hearing, the Government argued, consistent with the PSR and a statement in the Plea Agreement, that Defendant "*allowed* his pregnant girlfriend, Ms. Cervantes, to be involved in the criminal activity jointly with him." Tr., ECF No. 96, 18 (emphasis added).  The Court inquired about whether Petitioner "directed" or "supervised" Cervantes and why there was a discrepancy in "role" between the parties' adjusted offense level and the PSR.  The Government clarified that it did not believe Petitioner "directed" or "supervised" Cervantes, but that they were "jointly involved in the criminal activity."  *Id*. at 19.  The Court noted it understood the Government's position, accepted it, and determined Cervantes to be an independent actor.  *See id*. (calculating the applicable guideline range without the PSR's recommended increase for role).

Accordingly, Petitioner fails to show any actual prejudice sufficient to overcome his procedural default because the Court adopted his proposed sentencing guidelines and did not include the allegedly incorrect information in the PSR when the Court made its guideline range calculation.

Petitioner's ineffective assistance of counsel claims (Grounds One through Five of his motion) are not procedurally defaulted and are addressed below.

### B.    Grounds One through Five: Ineffective Assistance of Counsel Claims

10

A defendant who claims his attorney provided ineffective assistance must demonstrate both that (1) the attorney's performance "fell below an objective standard of reasonableness," and (2) there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687-88.  "[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."  *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

With respect to the first factor, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-88.  This involves proving "that counsel's performance was deficient," by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687; *see also Iaea v. Sunnn*, 800 F.2d 861, 864 (9th Cir. 1986) (citing *Strickland*).

As to the second factor, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill*, 474 U.S. at 58-59.  "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding."  *Strickland*, 466 U.S. at 691-92.  "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Id*. at 690.  Then, the court evaluates "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*.

Here, each of Petitioner's claims of ineffective assistance of counsel fail to show either (1) behavior by Mr. Baker that fell below the objective standard of reasonableness or (2) prejudice to Petitioner.

      **1.**     ***Petitioner has not shown he was coerced into the Plea Agreement***

11

In Ground One, Petitioner argues that his attorney, David Baker, was ineffective because Baker threatened that if Petitioner did not plead guilty, his girlfriend, Marcia Cervantes, would not be eligible for "safety valve" sentencing criteria set forth in 18 U.S.C. § 3553(f)(1)-(5) and "will be sentenced to [a] mandatory minimum of 5 years." Mot., ECF No. 89, 2-3.  Petitioner alleges that Baker told him if he did not sign the Plea Agreement, the Government would not push to lower the offense with which Cervantes was charged, meaning she would not be sentenced to probation, would serve time in prison, and no one would be available to care for her children.  *Id.* at 5.  He also states that he "forcefully signed the plea agreement that he did NOT desire [to sign] with untrue facts due to Defense Counsel David Baker's threats and promises of getting the errors fixed and informing the government of Aragon's desire to cooperate." *Id*. at 24.  As a result, he contends his guilty plea was involuntary.

Under the *Strickland* test, "a defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was ineffective." *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir. 2004) (quoting *Hill*, 474 U.S. at 56-57).  Thus, in a claim of ineffective assistance of counsel arising out of a defendant's guilty plea, the defendant must meet the *Strickland* test by showing that (1) under an objective standard, "counsel's assistance was not within the range of competence demanded of counsel in criminal cases" and (2) the defendant suffered actual prejudice because of this incompetence. *Lambert*, 393 F.3d at 979-80; *Lockhart*, 474 U.S. at 57-58.  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

Here, Baker flatly refuted that he told Petitioner a failure to enter into a plea agreement would affect Cervantes' "safety valve" treatment.  Baker Decl., ECF No. 101-3, 1-2.  More importantly, however, Petitioner's argument is contradicted by his own sworn statements during his change of plea hearing.  The Plea Agreement states that "[n]o one has threatened defendant or defendant's family to induce this guilty plea."

12

ECF No. 25, 7.  After placing Petitioner under oath, Magistrate Judge Brooks found Petitioner had knowingly and voluntarily entered into the Plea Agreement, and that Plea Agreement "did not result from force, threats or promises (other than those made in the plea agreement)."  Findings and Recommendations, ECF No. 26, 4.

These were findings to which Petitioner did not object.  Because Petitioner's new argument is devoid of evidence of counsel's coercion, his claim lacks support. Accordingly, Petitioner's first claim fails to show ineffective assistance of counsel.

Even assuming Baker had made the alleged statements, Petitioner has not claimed he would have gone to trial on all three cases brought against him.  Thus, Petitioner has also failed to demonstrate any actual prejudice.  *See Hill*, 474 U.S. at 58-59.  Petitioner's first claim fails to show ineffective assistance of counsel for this reason as well.

### 2. *Petitioner has not shown his counsel was inadequate during the sentencing hearing with respect to presenting mitigating evidence*

Petitioner's Second and Third Grounds for relief allege his counsel was ineffective by failing to accept and present mitigating evidence at Petitioner's sentencing hearing, specifically (1) letters from his family and (2) evidence of Petitioner's "post-arrest rehabilitative efforts."  Mot., ECF No. 89, 5, 25-26.

The *Strickland* test also applies during noncapital sentencing proceedings.  *Daire v. Lattimore*, 812 F.3d 766, 767 (9th Cir. 2016) (citing *Glover v. United States*, 531 U.S. 198, 202-04 (2001).  At sentencing, "the formulation of the standard [for deficient performance, as an element of ineffective assistance of counsel] is the same: reasonable competence in representing the accused."  *See Premo v. Moore*, 562 U.S. 115, 126 (2011) (quoting *Strickland*, 466 U.S. at 688) (alteration in original).  Thus, in a claim of ineffective assistance of counsel arising out of counsel's performance at a defendant's sentencing hearing, the defendant must meet the *Strickland* test by showing that (1) under an objective standard, "counsel's assistance was not within the range of competence demanded of counsel in criminal cases" and (2) the defendant suffered actual prejudice because of this incompetence.  *Lambert*, 393 F.3d at 979–80; *Lockhart*, 474 U.S. at 57-

13

58.

Petitioner's arguments boil down to a claim that his attorney did not present all of the evidence Petitioner wanted his attorney to present.  However, a defendant may not cry ineffective assistance of counsel merely because his or her attorney did not raise all of the arguments the client wishes the attorney would have raised.  *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (noting that counsel "must be allowed to decide what issues are to be pressed").  Courts view attorneys' professional judgment with a presumption of deference.  *Strickland*, 466 U.S. at 689; *see also Smith v. Stewart*, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (noting that counsel is not required to file "kitchen-sink briefs" because it "is not necessary and is not even particularly good . . . advocacy").

During the sentencing hearing, Petitioner's counsel addressed Petitioner's family support and noted that members of Petitioner's family were present in the Court for the hearing.  Tr., ECF No. 96, 3-4.  Moreover, Petitioner's counsel denies that Petitioner ever gave counsel letters from Petitioner's family to submit to the Court.  Baker Decl., ECF No. 101-3, 2-3.  Even if they existed, the Court does not find that they would have affected Petitioner's sentence.  The Court was aware of the Petitioner's family support when considering the factors contained in 18 U.S.C. § 3553.  The Court determined that a sentence at the high end of the guideline range was appropriate given Petitioner's significant criminal history and involvement with both drugs and firearms.  Tr., ECF No. 96, 22.  Letters from family would not have caused a change in Petitioner's sentence here.

Petitioner also argues his counsel failed to present mitigating evidence at his sentencing hearing of his "post-arrest rehabilitative efforts."  Mot., ECF No. 89, 4-5.  However, Petitioner filed his own Sentencing Memorandum, which discussed how Petitioner had decided to change his life and realized the error of his actions.  *See* ECF No. 55 at 3-4.  Petitioner himself exercised his opportunity to speak directly to the Court during his sentencing hearing as evidenced by over ten pages of the transcript from the sentencing hearing, at which time Petitioner explained what led him to commit his crimes

14

1    and how much he regretted his actions.  ECF No. 96, 5-15.  In addition, Petitioner's

2    counsel addressed Petitioner's post-arrest conduct during the sentencing hearing, as well

3    as the significant impacts his case had on his family.  *Id.* at 3-4.  Counsel likewise argued

4    that even with a sentence at the low end of the guideline range, Petitioner would be a

5    changed man and "a productive member of society."  *Id*.

6          In sum, attorneys are not required to advance every argument their client wants

7    them to make in order to provide effective representation.  *Barnes*, 463 U.S. at 751.

8    Rather, courts vest counsel with discretion in representing their clients.  *Strickland*, 466

9    U.S. at 689.  For these claims, Petitioner has failed to make any showing that his

10   counsel's performance here fell below the standard of competence required of counsel.

11   *See Strickland*, 466 U.S. at 687-88.  Accordingly, Petitioner's Second and Third Grounds

12   fail to show ineffective assistance of counsel.

13              **3.**      ***Petitioner has not shown a material inaccuracy in the PSR***

14         Petitioner's Fourth Ground for relief alleges ineffective assistance of counsel

15   because his attorney failed to advise Petitioner of his right to correct inaccurate

16   information in the PSR.  Mot., ECF No. 89, 5-6.  According to Petitioner, the PSR

17   incorrectly indicated that Petitioner's girlfriend, Marcia Cervantes, distributed

18   methamphetamine at Petitioner's direction.  *Id*. at 6.  He contends that if "the Court

19   would have taken [the error] into consideration at sentencing to address the errors," he

20   would have had "the probability of a different outcome at sentencing."  *Id.* at 28.  The

21   Government argues Petitioner's counsel reviewed the PSR with Petitioner in detail, and

22   that this factual allegation is also contained in Petitioner's Plea Agreement, which

23   Petitioner conceded under oath was true and could be proven at trial beyond a reasonable

24   doubt.  Opp'n, ECF No. 101, 5.

25         As explained above in analyzing Ground Eight, this argument fails to show actual

26   prejudice because the Court adopted Petitioner's proposed guideline range and did not

27   include the two-level increase in adjusted offense level recommended in the PSR for

28   Petitioner's alleged role in supervising Cervantes.  Moreover, Petitioner's claims are

dubious.  Petitioner's counsel stated he "went over the PSR with [Petitioner] in detail prior to sentencing and he failed to bring any alleged inaccuracies to [counsel's] attention."  Baker Decl., ECF No. 101-3, 3.  Petitioner also agreed under oath and subject to the penalty of perjury that the facts he now disputes were "true, undisputed and could be proven at trial beyond a reasonable doubt."  Plea Agreement, ECF No. 25, 4. Petitioner further reaffirmed the voluntariness and accuracy of the facts contained in the Plea Agreement before Magistrate Judge Brooks.  Findings and Recommendations, ECF No. 26, 4.  In short, the record is devoid of evidence supporting Petitioner's claim that the PSR contained inaccurate facts or that those inaccurate facts caused him prejudice.

Accordingly, Petitioner has failed to prove either ineffective assistance of counsel or prejudice.

### 4.    *Petitioner has not demonstrated the Government wanted his help*

Petitioner's Fifth Ground for relief alleges ineffective assistance of counsel because his attorney failed to inform the Court during sentencing that Petitioner offered to cooperate with the Government.  Mot., ECF No. 89, 6-7.  He argues that he asked his attorney to exclude the public from the courtroom so he could present confidential information, but his attorney said he would not relay the request to the Court and advised Petitioner not to make the request to the Court himself.  *Id.* at 29.  Petitioner argues that he was unable to put on a proper defense and relay all mitigating evidence due to the public's presence in the courtroom.  *Id.*  However, he fails to articulate what evidence he would have presented.  *Id.*  Undercutting the claims, Petitioner's own counsel stated that he presented Petitioner's offer of cooperation to the Government, but the Government rejected the offer.  Baker Decl., ECF No. 101-3, 3.  Accordingly, counsel reports that he chose not to address the rejected offer of cooperation as he did not believe it would have a positive impact on sentencing.  *Id*.

To find ineffective assistance of counsel, *Strickland* requires counsel's representation to fall "outside the wide range of professionally competent assistance," and that "there is a reasonable probability that, but for counsel's unprofessional errors,

16

the result of the proceeding would have been different."  466 U.S. at 687-90.  First, the Court has already acknowledged the public's right to be present in the courtroom during criminal proceedings.  *Presley*, 558 U.S. at 215.  As such, the Court does not find Baker's failure to request that the public be excluded from the courtroom to constitute error. Petitioner also addressed the Court directly for a significant period of time and could have, but did not, relay this request to the Court.

Assuming for argument's sake that this allegation calls into question counsel's performance, the Court concludes it would not have affected Petitioner's sentence.  Put simply, Petitioner's rejected offer to assist the Government would not have influenced the Court's sentence given Petitioner's substantial criminal history and trafficking in both drugs and firearms.  Accordingly, Petitioner's Fifth Ground for relief alleging his counsel did not convey Petitioner's offer to help the government fails to show ineffective assistance of counsel.

**C.     Ground Six: Conditions of Supervised Release 4, 5, and 13 are vague**

Both Petitioner and the Government agree that since Petitioner's sentence became final, the language of standard conditions of supervision 4, 5, and 13 have been amended to address vagueness concerns.  *See Evans*, 883 F.3d at 1162-1164; *see also* Opp'n, ECF No. 101, 89 ("The Government respectfully submits that the Court should amend the language of standard conditions of supervision 4, 5 and 13").  Because these conditions do not provide Petitioner clear notice of what is required of him, Petitioner's motion is **GRANTED-IN-PART**.  The Court strikes the Conditions of Supervised Release 4, 5, and 13 from Petitioner's sentence.

**D.     Petitioner's Remaining Motions**

Petitioner also filed a Motion to Compel Discovery.  *See* ECF No. 92.  Petitioner's motion asks the Court to compel his former attorney, David Baker, to assist Petitioner by providing him discovery related to his Motion to Vacate, Correct, or Set Aside.  *Id*.  The Court finds nothing in Petitioner's Motion to Vacate that would have been aided by an order compelling Petitioner's former counsel to participate in discovery.  Rather, the

Court is able to render a decision on Petitioner's Motion to Vacate with the existing record in this case.  Accordingly, Petitioner's Motion to Compel Discovery is **DENIED as moot**.  *See Tur v. YouTube, Inc.*, 562 F.3d 1212, 1214 (9th Cir. 2009) (holding "that an issue is moot when deciding it would have no effect within the confines of the case itself").  The Government's Motion for Extension of Time to File Response, ECF No. 95, is likewise **DENIED as moot**.  *See id.*

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's Motion to Vacate is **DENIED**.  ECF No. 89.  Because the record refutes Petitioner's factual allegations and otherwise precludes habeas relief, Petitioner's Motion is **DENIED** without an evidentiary hearing.  The Court strikes Conditions of Supervised Release 4, 5, and 13.

Finally, the Court denies Petitioner a certificate of appealability.  A defendant is required to obtain a certificate of appealability in order to appeal a decision denying a motion under 28 U.S.C. § 2255.  A court may issue a certificate of appealability where the movant has made a "substantial showing of the denial of a constitutional right," and reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserve encouragement to proceed further.  *See Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003).  This Court finds that Petitioner has not made the necessary showing.  A certificate of appealability is therefore **DENIED.**

**IT IS SO ORDERED.**

DATED: March 25, 2021

_____
HON. ROGER T. BENITEZ
United States District Court Judge

18